UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FAUSTIN FREDERICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01212-SEB-MG |
| | ) | |
| ORISANAIYE Officer, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Faustin Frederick brought suit against Defendant Officer Orisanaiye alleging unconstitutional conditions of confinement and deliberate indifference to a serious medical need. Officer Orisanaiye has moved for summary judgment. Dkt. [52]. For the reasons below, that motion is **GRANTED**.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

1

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Frederick failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Officer Orisanaiye has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Frederick and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On January 3, 2024, Mr. Frederick was housed on the K1 range at Plainfield Correctional Facility ("Plainfield"). Dkt. 53-1 at 8 (Frederick Deposition). At approximately 3:47 p.m., the range flooded with two inches of standing water containing human waste. *Id.* at 11.

On that day, Officer Orisanaiye worked night shift at Plainfield. *Id.* Officer Orisanaiye was one of two officers assigned to work either the K1 or K2 ranges, however, the second officer was

2

reassigned leaving Officer Orisanaiye alone for the K1 and K2 ranges. Dkt. 53-2 ¶ 6 (Orisanaiye Affidavit). After arriving for his shift, Officer Orisanaiye completed a walkthrough of his assigned area and learned that the K1 range had flooded prior to the shift change. *Id.* ¶ 7.

Officer Orisanaiye contacted his sergeant, and inmate sanitation workers were called to clean and sanitize the K1 range and all of the affected areas. *Id.* ¶ 8. At approximately 6:03 p.m., a broom was handed out, and the floor was in the process of being squeegeed. Dkt. 53-3 at 5 (Photographs). The inmate workers also used chemicals during their clean-up efforts. Dkt. 53-1 at 34. Incarcerated individuals housed on the K1 range were not permitted to leave their cells until the range was cleaned for their safety, and they were instructed to remain on their bunks until the affected areas were cleaned. Dkt. 53-2 ¶¶ 9–10.

While sanitation workers were cleaning the K1 range, Officer Orisanaiye ran operations on the K2 range by conducting showers and phone calls for individuals housed in K2. *Id.* ¶ 11. While working on the K2 range, Officer Orisanaiye overheard incarcerated individuals yelling and banging on their cells from the K1 range. *Id.* ¶ 12. Officer Orisanaiye called for his sergeant to check on the K1 range in response to the commotion. *Id.* ¶ 13. The non-party sergeant went to K1 and observed Mr. Frederick on the floor of his cell who stated that he had fallen from his bunk. *Id.* ¶ 14.

Mr. Frederick had hopped off of his bunk and slipped, hitting his head on the bunk. Dkt. 53-1 at 23–24. The non-party sergeant called a signal 3000 for first responders and medical personnel, consisting of "probably three of four" nurses, to come to Mr. Frederick's cell. *Id.* at 25–26. Officer Orisanaiye also responded to the signal 3000 to the cell. *Id.* Mr. Frederick was taken to the medical unit in a wheelchair by medical personnel. *Id.* At the medical unit, Mr. Frederick was cleaned off with an antiseptic spray, bandaged and wrapped, and his vitals were checked. *Id.*

at 27–28. Mr. Frederick was not in obvious distress and was sent back to his housing unit in stable condition. Dkt. 53-5 at 3 (Medical Records).

When Mr. Frederick returned to K1 from the medical unit, he was not immediately placed back in his cell but went to a recreation room while his room was squeegeed and disinfected. Dkt. 53-1 at 28. After being returned to his cell, Mr. Frederick went to bed between 11:30 p.m. and 12 a.m. and slept through the night. *Id.* at 31. When Mr. Frederick woke up the next morning, the water had been turned back on. *Id.*

Inmate staff were still cleaning up the affected areas when Mr. Frederick was returned to K1 from the medical unit. *Id.* at 34. Correctional staff also brought around chemicals for incarcerated individuals to clean their cells. *Id.* Throughout January 3, 2024, Mr. Frederick had access to a small amount of cleaning supplies in his cell. *Id.* at 35. He also had clean clothing, including sweats, white t-shirts, boxers, socks, shorts, khaki blues, and a jumpsuit in his cell and was able to change into clean clothing when he was returned to his cell. *Id.* at 36.

At some point after the flooded areas were cleaned and sanitized, the second officer returned to K1 and K2, and Officer Orisanaiye completed activities on the K1 range, including offering showers to incarcerated individuals assigned to K1. Dkt. 53-2 ¶ 18. At some time either late January 3, or in the early hours of January 4, after the range was cleaned, correctional staff ran showers for incarcerated individuals on the K1 range. Dkt. 53-4 at 32 (Michael Forrester Deposition). Officer Orisanaiye came to the cell doors to ask if incarcerated individuals in K1 wanted to shower. *Id.* at 47. At the very latest, Mr. Frederick received a shower by the end of January 4, 2024. Dkt. 53-1 at 37.

**III.**
**Discussion**

Mr. Frederick contends that Officer Orisanaiye violated his Eighth Amendment rights because of the conditions of his confinement related to the flooding, clean clothing, and showers and because Officer Orisanaiye was deliberately indifferent to Mr. Frederick's serious medical needs. Dkt. 13 at 2.

**A.    Conditions of Confinement**

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendant had a culpable state of mind — that he was "subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

*1.    Flooding*

The flooding began during the day shift, and Officer Orisanaiye is not liable for actions taken or not taken during day shift because he worked night shift and is not personally responsible for those actions. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("'To recover damages

under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))).

The evidence shows that once Officer Orisanaiye learned of the flooded K1 range, he then called his sergeant. Sanitation workers were called in to sanitize the affected areas. Clean-up efforts in the hallway between cells had begun by 6:03 p.m., and Mr. Frederick's cell was being cleaned when he returned from medical. He was back in his cell and asleep before midnight. Regarding the flooding, no rational jury could determine that Officer Orisanaiye had the culpable state of mind necessary for a deliberate indifference claim, so he is entitled to summary judgment on this claim.

### 2.    *Clean Clothing*

The evidence before the Court reveals that Mr. Frederick had clean clothing available to him in his cell when he returned to it after it had been cleaned. No rational jury could determine that there was an objectively serious condition related to Mr. Frederick's clothing that created an excessive risk to his health and safety. Even if the flooding had created a situation where the Eighth Amendment demanded clean clothing for Mr. Frederick, he had access to it, so no rational jury could decide that Officer Orisanaiye was deliberately indifferent to it. Officer Orisanaiye, therefore, is entitled to summary judgment regarding the clean clothing.

### 3.    *Shower*

The individuals housed in K1 range were offered showers after the flooding cleanup had been completed. Prior to this, they were not allowed out of their cells for their own safety. The showers occurred either late in the night on January 3 or early in the morning on January 4. Mr. Frederick agrees that, at the latest, he received a shower by the end of January 4. As with the clean

clothing argument, Mr. Frederick lacks evidence from which a rational jury could conclude that Officer Orisanaiye was deliberately indifferent, so summary judgment is appropriate here as well.

## B.      Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Frederick's fall and associated injuries were objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Officer Orisanaiye acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to Mr. Frederick's health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Frederick "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

In the deliberate indifference context, nonmedical correctional staff are generally entitled to rely on the judgment of medical personnel when confronted with a prisoner with a medical

7

condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Staff may be found to be deliberately indifferent "if they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation marks omitted). But because correctional staff "must discriminate between serious risks of harm and feigned or imagined ones, which is not an easy task," the Court does not require them to be "credulous" in response to an individual's complaints. *Zemlick v. Burkhart*, No. 24-2799, 2026 WL 172617, at *4 (7th Cir. Jan. 22, 2026) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)).

The evidence before the Court shows that when the K1 range was trying to get correctional staff attention due to Mr. Frederick's fall, Officer Orisanaiye—occupied at the time with showers and phone calls for the K2 range—called for his sergeant to check on the noise in K1 range. When the sergeant called a signal 3000, Officer Orisanaiye responded. Medical staff transported and treated Mr. Frederick, and then they released him, noting he was stable and not in any obvious distress.

Mr. Frederick has produced no evidence to show that Officer Orisanaiye consciously disregarded a serious risk to Mr. Frederick's health. On the undisputed facts presented, Officer Orisanaiye is entitled to summary judgment on the deliberate indifference claim.

## IV.
## Conclusion

Officer Orisanaiye's motion for summary judgment is **GRANTED**. Dkt. [52].

Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date:  2/24/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

FAUSTIN FREDERICK
150242
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

All Electronically Registered Counsel